**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RALPH JOHNSON, | ) NO. CV 21-2543-AB(E) |
| Plaintiff, | ) |
| v. | ) ORDER DISMISSING COMPLAINT |
| J. SCOTT, | ) WITH LEAVE TO AMEND |
| Defendant. | ) |

For the reasons discussed below, the Complaint is dismissed with leave to amend. See 28 U.S.C. § 1915(e)(2)(B).

**PROCEEDINGS**

Plaintiff, a state prisoner incarcerated at the California Men's Colony ("CMC") filed this pro se civil rights action pursuant to 42 U.S.C. section 1983 on March 23, 2021. Plaintiff sues the sole named Defendant, CMC Correctional Officer J. Scott, in his individual and official capacities.

///

**PLAINTIFF'S ALLEGATIONS**

The Complaint alleges that Plaintiff is Jewish and has been participating in the prison's kosher diet program for sixteen months (Complaint, p. 5). Plaintiff alleges that, on January 19, 2020, Plaintiff entered the dining hall to collect his evening kosher meal (id.). Defendant allegedly told Plaintiff to sign his name "in the proper signature designation" or Plaintiff would not receive his meal (id.). Because Plaintiff allegedly is an "E.O.P. inmate also with a DDP 2 designation,"[1] Plaintiff assertedly asked Scott to show Plaintiff where to sign because Plaintiff allegedly cannot read (id.). Defendant allegedly became irritated, called Plaintiff "a liar" and accused Plaintiff of "playing games" (id.). Defendant then allegedly ordered Plaintiff to leave the dining hall without his meal (id.). Plaintiff assertedly had no choice but to comply with the alleged order, and Plaintiff left the dining hall without his evening meal (id.).

The Complaint contains four claims for relief. In Claim 1, Plaintiff alleges that Defendant violated Plaintiff's First Amendment right to the free exercise of his religion, and also discriminated against Plaintiff on account of Plaintiff's alleged mental illness and developmental disability (id.). Plaintiff also appears to allege that Defendant exhibited deliberate indifference to Plaintiff's right to

---

[1] The "Enhanced Outpatient Program" ("E.O.P.") is "a high level outpatient psychiatric care program offered at CDCR [California Department of Corrections and Rehabilitation]." White v. Pfeiffer, 2021 WL 736246, at *1 n.1 (E.D. Cal. Feb. 25, 2021). The meaning of a "DDP 2 designation" is uncertain.

2

receive food (id.).

In Claim 2, Plaintiff alleges that Defendant violated the Americans with Disabilities Act, 42 U.S.C. section 12101 et seq. ("ADA") by denying Plaintiff a kosher meal (id., attachment, p. 1). Plaintiff alleges that he has a mental health diagnosis of chronic schizophrenia, paranoid type, and assertedly is developmentally disabled and cannot read (id.). Plaintiff alleges that he qualified for the kosher meal program and that his "only auxiliary need[]" assertedly is the need for assistance from the guard passing out meals in showing Plaintiff where to place Plaintiff's signature (id.). Plaintiff alleges that Defendant's denial of Plaintiff's kosher meal assertedly constituted discrimination on account of Plaintiff's alleged developmental disability, i.e., his alleged inability to read (id.).

In Claim 3, Plaintiff alleges that Defendant discriminated against Plaintiff on account of disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. section 794 (id., attachment, pp. 1-2). This claim is based on the same factual allegations as those underlying Claims 1 and 2 (id.). Plaintiff claims that Defendant discriminated against Plaintiff on account of Plaintiff's alleged inability to write his name, as well as Plaintiff's alleged inability to read (id., attachment, p. 2).

Claim 4 appears to be based on different alleged incidents. Plaintiff alleges that, on or about January 22, 2020, Plaintiff informed Officer Craig of the "January 20, 2020 [sic]" event

(id., attachment, p. 5).[2] Officer Craig allegedly told Plaintiff that he, Craig, would look into the situation and speak to Defendant (id.). On or about January 24, 2020, Craig allegedly told Plaintiff that Craig had spoken with Defendant and "the issue has been resolved" (id.).

On or about January 26, 2020, Plaintiff allegedly reported to the dining hall to receive his evening meal (id.). Again, Defendant allegedly was issuing the kosher meals (id.). Plaintiff allegedly presented his state-issued identification card and again sought assistance from Defendant in identifying the correct place to sign for Plaintiff's meal (id.). Defendant allegedly said that "he ha[d] witnessed [Plaintiff] playing the game of chess and if [Plaintiff] was smart enough to play chess then [he] was smart enough to know where to sign [his] name" (id.). Plaintiff allegedly said that he did not need help playing chess but that reading where to sign for his meals assertedly was difficult for him (id.). Defendant allegedly replied that Plaintiff was "full of shit" and "playing a game" (id.). Defendant allegedly said that, if Plaintiff did not sign for the meal without Defendant's assistance, Plaintiff assertedly would not receive his meal (id.). Because Plaintiff allegedly could not read or sign for his meal without staff assistance, Defendant assertedly ordered Plaintiff to leave the dining hall without Plaintiff's kosher meal (id.).
///
///

---

[2] It appears Plaintiff may have intended to refer to the alleged January 19, 2020 event.

4

Plaintiff allegedly returned to the housing unit immediately and explained the situation to Officer Cota, who assertedly told Plaintiff to speak to Officer Mohommad (id.). After Plaintiff allegedly spoke to Officer Mohommad, Mohommad assertedly told Plaintiff to wait while Mohommad spoke to Defendant (id.). Later, Mohommad allegedly returned and instructed Plaintiff to go back to the dining hall where Defendant would assist Plaintiff in identifying where to sign Plaintiff's name to receive Plaintiff's kosher meal (id.).

With respect to damages, Plaintiff alleges that, as a result of being denied his evening meal on January 19, 2020, Plaintiff suffered a headache, nausea and stomach pains (id.). Plaintiff seeks nominal and punitive damages on all claims, as well as compensatory damages on Claim 4 (Complaint, p. 6).

Attached to the Complaint is an "Inmate/Parolee Appeal," dated January 20, 2020. In this appeal, Plaintiff complains that Defendant refused Plaintiff's request for assistance in signing Plaintiff's name to receive his evening meal and Plaintiff alleges that Defendant discriminated against Plaintiff on account of Plaintiff's asserted mental illness and developmental disability (Complaint, Exhibits, ECF Dkt. No. 1, pp. 16-20). The appeal allegedly was granted in part and denied in part at the second level of review, but denied at the third level of review (id., pp. 12-15).

///
///
///
///

**DISCUSSION**

**I. The Eleventh Amendment Bars Plaintiff's Constitutional Claims for Damages Against Defendant.**

To the extent Plaintiff alleges official capacity claims for damages for constitutional violations, the Court must construe Plaintiff's claims against Defendant as claims against the State of California. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not abrogate Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 344-45 (1979) (footnote omitted). California has not waived its Eleventh Amendment immunity with respect to section 1983 claims. Brown v. Calif. Dep't of Corrections, 554 F.3d 747, 752 (9th Cir. 2009) (citations omitted); Dittman v. State of California, 191 F.3d 1020, 1025 (9th Cir. 1999), cert. denied, 530 U.S. 1261 (2000). Because this defect is not curable, the Court will dismiss Plaintiff's official capacity claims for damages with prejudice. See Plumeau v. School District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

///

///

///

**II. The Complaint Fails to State a Cognizable Free Exercise Claim.**

Prisoners "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted); see Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of a prisoner's religion by preventing the prisoner from engaging in conduct which is rooted in the prisoner's sincerely held religious belief. Walker v. Beard, 789 F.3d 1125, 1138 (9th Cir.), cert. denied, 577 U.S. 1015 (2015); Shakur v. Schriro, 514 F.3d 878, 884–86 (9th Cir. 2008). However, prisoners' First Amendment rights are limited by the loss of freedom intrinsic to incarceration and by the penological objectives of the institution. O'Lone v. Estate of Shabazz, 482 U.S. at 348. To state a cognizable Free Exercise claim, a prisoner must allege facts showing that the defendant substantially burdened the practice of the prisoner's religion without any justification reasonably related to legitimate penological interests. Id. at 348-50 (applying the test set forth in Turner v. Safley, 482 U.S. 78 (1987)); see Jones v. Williams, 791 F.3d 1023, 1031-1033 (9th Cir. 2015); Shakur v. Schriro, 514 F.3d at 884-88.

"A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d at 1031-32 (citations omitted;

original ellipses and brackets).  The denial of a religious practice, or a religious meal, on a single isolated occasion does not constitute a "substantial burden" and thus does not violate the First Amendment. See, e.g., Brown v. Washington, 752 Fed. App'x 402, 405 (9th Cir. 2018) ("The district court properly granted summary judgment on Brown's First Amendment free exercise claim involving his hair, which relates to a one-time set of circumstances amounting to no more than an unintentional interference with his ability to exercise his religious beliefs."); Howard v. Skolnik, 372 Fed. App'x 781, 782 (9th Cir. 2010) (two incidents of interference with prisoner's fasting did not amount to a substantial burden); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" interference with religious exercise not a substantial burden); Wilson v. Juaregui, 2019 WL 1559195, at *2–3 (N.D. Cal. Apr. 10, 2019) (denial of kosher breakfast and lunch on two days did not impose substantial burden on inmate's religious rights); Pouncil v. Sherman, 2018 WL 646105, at *3 (E.D. Cal. Jan 31, 2018) (denial of meals for a single night of Ramadan did not present a substantial burden); Stidhem v. Schwartz, 2017 WL 6887139, at *3-4 (D. Or. Oct. 23, 2017), adopted, 2018 WL 358496 (D. Or. Jan. 10, 2018) (a less-than-one-day suspension of plaintiff's kosher diet did not amount to a substantial burden); Glover v. Evans, 2007 WL 3022249, at *2 (N.D. Cal. Oct. 15, 2007) (denial of religious meal on a single occasion did not state a constitutional violation).

///

///

///

///

**III. The Complaint Fails to State a Constitutional Deliberate Indifference Claim.**

Although the Complaint is unclear, it appears that Plaintiff may intend to bring an Eighth Amendment deliberate indifference claim based on the alleged denial of a meal (see Complaint, p. 5).

The Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1259 (9th Cir. 2016) (citations omitted). The deprivation of a single meal does not rise to the level of a constitutional violation. See Wilson v. Pima County Jail, 256 Fed. App'x 949, 950 (9th Cir. 2007) (inmate did not suffer a serious deprivation when officer took away the inmate's lunch); Foster v. Runnels, 554 F.3d 807, 812 n.1 (9th Cir. 2009) (deprivation of meals on two occasions did not rise to the level of a constitutional violation); Ruiz v. Lucas, 2021 WL 84393, at *4 (E.D. Cal. Jan. 11, 2021) (denial of one meal did not violate the Eighth Amendment); Stevenson v. Adams, 2012 WL 5452075, at *3 (E.D. Cal. Nov. 7, 2012) (same).

**IV. The Complaint Fails to State a Cognizable Claim under the ADA or the Rehabilitation Act.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

To prevail under the ADA or the Rehabilitation Act, Plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability. Townsend v. Quasim, 328 F.3d 511, 516 (9th Cir. 2003); see also Boose v. Tri-County Metro. Transp. Dist. of Oregon, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) ("Because the ADA was modeled on section 504 of the Rehabilitation Act, courts have applied the same analysis to claims brought under both statutes.") (citation and quotations omitted). A plaintiff must show that the discrimination occurred solely by reason of disability. Weinreich v. Los Angeles County Metropolitan Transportation Authority, 114 F.3d 976, 978 (9th Cir.), cert. denied,

522 U.S. 971 (1997). "Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007) (citation and internal quotations omitted). "The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); see Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 193 (2002). The same definition applies in Rehabilitation Act cases. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).

Plaintiff has not alleged that Defendant discriminated against Plaintiff solely on account of any alleged disability of Plaintiff. Rather, the Complaint appears to allege that Defendant refused to allow Plaintiff to take his meal because Plaintiff did not sign for the meal. Although Plaintiff alleges that he told Defendant that Plaintiff purportedly could not read or write, illiteracy alone does not constitute a disability. See Morisky v. Broward County, 80 F.3d 445, 448 (11th Cir. 1996) ("While illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment.") (citation omitted); Adams v. Crestwood Medical Center, 2020 WL 7049856, at *14 (N.D. Ala. Dec. 1, 2020) (rejecting claim that plaintiff's illiteracy itself was a disability); see "Appendix to Part 1630 - Interpretive Guidance on

Title I of the Americans with Disabilities Act," 29 C.F.R. § Pt. 1630, App. "Section 1630.2(h) Physical or Mental Impairment" ("Environmental, cultural, or economic disadvantages such as poverty, lack of education, or a prison record are not impairments.").

Furthermore, Plaintiff cannot obtain damages under the ADA or the Rehabilitation Act from Defendant in Defendant's individual capacity. See Stewart v. Calif. Dep't of Educ., 493 Fed. App'x 889, 891 (9th Cir. 2012); Griffin v. Kelso, 2018 WL 3752132, at *7 (E.D. Cal. Aug. 8, 2018), adopted, 2018 WL 4613133 (E.D. Cal. Sept. 26, 2018); see also Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003) (plaintiff could not sue public official in his or her individual capacity under 42 U.S.C. section 1983 for ADA violations).

In any event, compensatory damages are not available under the ADA or the Rehabilitation Act absent a showing of discriminatory intent. Updike v. Multnomah County, 870 F.3d 939, 950 (9th Cir. 2017), cert. denied, 139 S. Ct. 55 (2018); Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998), cert. denied, 526 U.S. 1159 (1999). To show intentional discrimination, a plaintiff must show that a defendant acted with "deliberate indifference," which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." Updike v. Multnomah County, 870 F.3d at 950-51. Plaintiff alleges only that Defendant ordered Plaintiff to leave without Plaintiff's meal because Plaintiff did not provide the proper signature, supposedly because Plaintiff could not read or write.

Plaintiff does not allege facts showing that Defendant knew that Plaintiff suffered from a disability as defined by the ADA and the Rehabilitation Act and intentionally discriminated against Plaintiff because of that disability.

**ORDER**

Plaintiff's constitutional claims for damages against Defendant in Defendant's official capacity are dismissed without leave to amend and with prejudice. The Complaint otherwise is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a First Amended Complaint. Any First Amended Complaint shall be complete in itself and shall not refer in any manner to the prior Complaint. Plaintiff may not add Defendants without leave of court. See Fed. R. Civ. P. 21. Failure timely to file a First Amended Complaint in conformity with this Order may result in the dismissal of the action. See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive problems with his claims); Plumeau v. School District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir.

1997) (denial of leave to amend appropriate where further amendment would be futile).

DATED: April 28, 2021.

_____
ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE

PRESENTED this 1st day of
April, 2021, by:

      /S/
_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE